ALICE C. STRONG et al.

*v.*

BERNARD SMITH et al.

[Submitted April 7th, 1905.   Decided July 7th, 1905.]

A purchaser under a decree in chancery for the foreclosure of a mortgage may, by proper proceedings, obtain a writ of assistance against a person who was not a party in the foreclosure suit, but who claims possession of the mortgaged premises under such a party and whose right of possession is clearly subordinate to that of the purchaser, even though the rights of the possessor have not been foreclosed under the decree.

On appeal of David Lamar, the person in possession, against Albert G. Spalding, petitioner, for writ of assistance.   From an order of the court of chancery advised by Vice-Chancellor Stevenson, who filed the following opinion:

The petition for the order for possession is, as usual, filed by the purchaser at the foreclosure sale.   This purchaser, Mr. Albert G. Spalding, in fact was a defendant in the foreclosure suit as the holder of a mortgage upon the premises in question. He stands now, however, in this court with his petition asserting his rights by virtue of his purchase.

The party to this present proceeding, Mr. David Lamar, who resists the effort of Mr. Spalding to obtain possession, was not a party to the suit, although he is now, and has been continuously from a time prior to the commencement of the suit, occupying the mortgaged premises to an extent which will appear later.

The petition is in the ordinary form, and prays that "an order may be made by this honorable court directing and commanding the said Bernard Smith *and his confederates, or anyone holding under him,* forthwith to quit said premises and to deliver the possession thereof" to the petitioner.   Bernard Smith was made

defendant in the suit as the owner of the equity of redemption and also as the party in possession. As is alleged in the petition and proved by affidavit, the sheriff's deed to Spalding was duly exhibited to Smith and the usual demand for possession was at the same time served on him (Smith). After some delay, owing to difficulty in effecting service of the notice of the application for an order for possession upon Bernard Smith, a special order prescribing the mode of service was made on November 7th, 1904, and the notice was thereupon served in accordance with the requirement of the order. On the return day of the notice no one appeared for Bernard Smith. Counsel, however, desired to be heard on behalf of Mr. David Lamar, who, he alleged, was in possession of the premises. The court thereupon declined to hear counsel on behalf of Mr. Lamar unless he (Mr. Lamar) was made a party to the proceeding, and thereupon Mr. Lamar's appearance was entered and the proceeding was adjourned. Although no amendment of the petition was made, if one was necessary under the circumstances, the whole defence against the petitioner's application for an order for possession has been conducted by Mr. Lamar's solicitor and counsel in his name and for his benefit. Both parties to the controversy have had an abundant opportunity to take testimony. Depositions, some of which were taken in open court, and all of which were taken with opportunity for cross-examination, amounting to over two hundred typewritten pages, constitute the proofs upon which this application must be decided. I do not think that there is any technical or other rule which prevents this court from disposing of the controversy, which has been fully litigated between these parties.

My conclusions are as follows:

1. The case of *Beatty* v. *De Forest, 27 N. J. Eq. (12 C. E. Gr.) 482 (Court of Errors and Appeals, 1875)*, established the principle that a writ of assistance will go *ex debito justitiæ* to put a purchaser at a foreclosure sale in possession. Of course, the same principle applies on behalf of all parties to suits in equity who by the decree become entitled to the possession of land which is the specific subject of the suit. Chief-Justice Beasley, in delivering the opinion of the court in the above-

stated cause, says (at *p. 483*) : "In my opinion, a purchaser under a decree having a sheriff's deed has as much right to the assistance of the court to be put in possession as a plaintiff in a court of law has to an execution after judgment." He further says: "This remedy [the writ of assistance] is founded on the general principle that a court of equity will, when it can do so justly, carry its own decrees into full execution, without relying on the co-operation of any other tribunal. The consequence is that it cannot refuse its aid to one of its suitors in this respect except on some reasonable ground of equity."

2. The writ of assistance as indicated in the opinion above quoted bears substantially the same relation to a decree of the court of chancery that the writ of *habere facias possessionem* bears to a judgment of a law court in an action of ejectment. Of course, there are certain accidental differences arising from the difference in nature of the two proceedings at law and in equity, respectively, but the object of the writ in each case is the same, viz., to render the judgment or decree of the court effectual so far as such judgment or decree relates to the possession of the land which is the subject-matter of the suit. In the law court the writ goes to put the plaintiff in ejectment in possession. In equity the writ may go to put the complainant in possession if the decree gives him such possession, or to put the purchaser who has not been a party to the suit at all in possession of the land which has been sold to him pursuant to the decree.

When we come to inquire what classes of persons may be ousted from possession by virtue of these writs at law or in equity, respectively, we find that in each case strangers to the equitable or legal proceedings are liable to be so evicted.

For illustration of the methods and principles followed in courts of law in controlling the effect of the writs of *habere facias possessionem* and restitution in their operation, both upon the defendant in the ejectment suit and persons found in possession after judgment for the plaintiff, who had not been made parties to the action, see the following cases: *Den* v. *Johnson*, 12 *N. J. Law* (7 *Halst.*) *275* (*1831*) ; *Den* v. *O'Hanlin*, 18 *N. J. Law* (3 *Harr.*) *127* (*1840*) ; *White* v. *Den*, *24 N. J. Law*

(*4 Zab.*) *753* (*1853*); *Township of Union* v. *Bayliss, 40 N. J. Law* (*11 Vr.*) *60* (*1878*); *Hall* v. *Dexter, 3 Sawy. 434* (*1875*); *S. C., 11 Fed. Cas. 220.*

3. Ordinarily, possession is given by the power of a court of law or equity only against parties to the actions or suits, who as such are bound by the judgment or decree. There is no difficulty in dealing with the writs of either court so far as they affect the possession of parties to the proceedings who are estopped by the decree or judgment. But courts of law cannot take possession of real estate while an action of ejectment is pending, nor would it be advisable for courts of equity, in all cases where the right of possession of land may be determined by their decrees, to put the land *in custodia legis* by the appointment of a receiver. Both courts must meet the requirements of the situation as to the possession of land, which may greatly change while the legal proceedings are pending. If the process of the courts could only go for the dispossession of persons who have been parties to the suit, the judgments and decrees of our courts could be easily nullified. The general policy, therefore, both at law and in equity, is to require the actor who originates the proceeding which will affect possession to make certain inquiries with a view to make all persons parties to the suit whose claim to possession may be affected by the judgment or decree. But it is plain that even where this rule is strictly followed the practical administration of justice requires that the courts should often, after the decree has passed —indeed, after a sale has been made and a deed has been given to a purchaser—conduct a summary investigation and issue summary process in order to prevent some person not a party to the suit from holding possession practically in fraud of the proceedings which have awarded possession to another. The origin, and I think the limitation, of this summary power is necessity. The well-settled rule that all persons who take possession of real estate during the pendency of a suit under any of the defendants take subject to the suit and are liable to be dispossessed by process issuing in the suit, is, I think, an illustration of this principle.

44

4. We now come to the consideration of the different. instances in which a writ of assistance will go against persons in possession who have not been made parties to the suit in which the writ is issued. Without undertaking to make an exhaustive enumeration, because such enumerations which purport to be complete are generally dangerous, I think I may mention the following cases:

(1) Where the person in possession has entered pending the suit under any of the parties.

(2) In some cases, at least, I think where such person has entered pending the suit as a mere trespasser.

(3) Where such person has subjected his title and right of possession to the operation of section 58 of the Chancery act. *P. L. 1903 p. 385.*

(4) Where the person in possession, whether he entered into possession prior to the suit or. during its pendency, in fact has in his. own right a title under which he is holding possession, but conceals that title and by his conduct represents to the parties interested in the prosecution of the suit that his possession is subject to the suit and may be terminated in the same way in which the possession of the parties to the suit may be terminated. If the party has entered pending the suit, the conduct to be considered ordinarily would amount to a representation that such entry was made under one of the defendants, the fact of the existence of the independent title being concealed. If the party was in possession at the time when the suit was commenced, such conduct, ordinarily, would amount to a representation that such possession was that of a party to the suit, the independent title in like manner being concealed. Where the foreclosure suit is prosecuted to a decree and sale, without having this party in possession brought into the suit as a party defendant in reliance upon his representations, which, if true, would make it unnecessary to make him a defendant, I think an estoppel arises which will prevent him from asserting his title after the sheriff's sale to defeat the right of the purchaser to a writ of assistance. Whether such an estoppel will affect the title of the party in possession any further than to prevent him from asserting that title *in the suit* in order to

maintain his possession against the purchaser, is a question which will be considered hereafter. There is a plain difference between an estoppel which prevents a party in possession from maintaining such possession by virtue of his title *in the suit,* and an estoppel which prevents such party after he has gone out of possession—after he has submitted to the result of the suit—from obtaining possession again through his title by a subsequent action at law or suit in equity, or by a subsequent entry.

I make this rough enumeration because the novel situation presented in this case, it seems to me, can only be dealt with by determining in some way the general principles which are applied in all cases where this drastic and summary remedy under a writ of assistance is applied for.

5. Before undertaking to deal with the particular case in hand, I think another question in regard to the nature of these summary proceedings resulting in a writ of assistance against persons who have not been parties to the suit must be considered. This question relates to the effect of the order for possession and the order for the writ of assistance as an estoppel, as making something *res adjudicata* between the parties who are heard on the motion for these orders. Here we have as the actor in this present summary proceeding a man who is brought into the suit as a purchaser at the sheriff's sale, and as the defendant a man who has never in any way been a party to the suit. Such reflection as I have been able to give to this subject (without the aid of any authorities, for none have been produced) has led me to the conclusion that nothing can be settled in a proceeding like this—nothing can be made *res adjudicata* between the litigant parties excepting the right to take possession of the real estate in question as a result of the suit. It may be said, with substantial correctness, I think, that the sole question to be determined on a motion for a writ of assistance is whether the applicant has a right, as against the party in possession, to *use the suit* to obtain possession. The question of the maintenance of the possession which has been obtained by the writ after the whole function of the suit has been accomplished, in my opinion, is left open, entirely un-

affected by the adjudication of the court, on the motion for the writ.

If during the pendency of a foreclosure suit a stranger enters into possession and subsequently resists the application for a writ of assistance, on the ground that while he entered pending the suit, still he entered under a title paramount to the mortgage in the exercise of the right of possession which such title gave him, the court would be obliged to try summarily the question of fact whether this stranger to the suit entered under a defendant or entered under a paramount title. In this trial the existence of the paramount title might be subjected to an investigation which of itself would in its extent cover the field of a complicated suit in equity or an action of ejectment at law. If the court decided upon the evidence that it was a perfectly clear case—that the stranger had entered under a defendant and his alleged paramount title had no existence—the writ of assistance would go and the stranger would be dispossessed. But, is it possible that the validity of the alleged paramount title could be absolutely determined in such a summary proceeding? In my opinion, this stranger could immediately bring an action of ejectment upon his legal title, if it were such, or bring a suit in equity to establish his title if it were equitable, and in neither suit could the adjudication upon the application for the writ of assistance be set up as a bar to his claim. If this result is not correct, then a man's legal title, for the defence of which he has a right to claim the verdict of a jury in a court of law, could be destroyed by the finding of an equity judge on affidavits in a summary proceeding in a suit of which he had never had notice until as the result of such suit he was called upon to surrender possession. The holder of a disputed title paramount to the mortgage, if valid, would be in a worse position if he peaceably took possession pending a suit of which he had no notice whatever, than if he remained out of possession.

Courts of equity, as well as courts of law, are obliged to determine this question of possession by outside parties at the end of a suit in order to maintain the efficiency of suits for the accomplishment of the remedial purposes for which suits are provided. But it seems to me quite plain that the effect of

these summary determinations should be strictly limited to the necessity which compels the courts to make them. Where the purchaser at a foreclosure sale is put in possession by means of a writ of assistance, it seems to me he has no right to a title which is more effectual for the maintenance of his possession than that which the decree of the court gives him. He occupies the same position as if he had peaceably taken possession without the aid of the court. He must defend his title against all claimants. Whether hostile titles held by persons not parties to the suit have been cut off by the decree or barred by estoppels *in pais,* ought not to be determined in a summary proceeding on a motion for a writ of assistance, perhaps on *ex parte* affidavits only, with any greater degree of finality than is required for the accomplishment of the purpose of the writ of assistance. Any other rule, it seems to me, would frequently result in subjecting legal and equitable titles to summary extinguishment in a manner utterly inconsistent with rules and principles which we regard as an essential part of our constitutional and legal system. In many respects an order for possession or for a writ of assistance in favor of a purchaser in a foreclosure suit seems to be analogous to a prior order in the same cause placing the mortgaged premises in the temporary possession of a receiver, or to a prior order in the cause temporarily changing the custody of books and papers. No question of title or permanent right of possession after the suit has accomplished its purpose is settled by such orders, however important they may be for securing the objects of the suit.

In the case of *Den* v. *Johnson, supra,* the sheriff, under a writ of *habere facias possessionem,* had put the plaintiff in possession of more land than his title covered. On the return of the writ the defendant obtained an order to show cause why a writ of restitution should not be awarded to restore him to the possession of the land thus unjustly taken from him. Affidavits were thereupon taken. A rule was entered, which is set forth at length on *p. 283,* restoring possession to the defendant. Although at that time (1831) a judgment in ejectment was not conclusive, this special order for restoration recites that it was made "according to the evidence now produced before the

court," and it expressly provides that it "is not to conclude or in any way prejudice either party in any future action of ejectment or in any lawful investigation of their respective rights in regard to the premises in question in the above-stated action of ejectment or the lines and boundaries thereof."

In *Heilman* v. *Frey, 54 N. J. Law (25 Vr.) 284 (1892)*, the supreme court, after its judgment for the plaintiff in ejectment had been reversed by the court of errors and appeals, awarded a writ of restitution to the defendant and refused, on motion for the writ, to consider the claim which the plaintiff endeavored to present—that he had acquired an outstanding tax title which vested him with the right of possession and which had not been affected by the suit. The opinion of the court by Mr. Justice Dixon expressly holds that the dispossession of the plaintiff by the writ of restitution would have no effect upon his alleged tax title in any subsequent litigation. Here is another situation in which a person by reason of his relation to a suit is barred from setting up a legal title and right of possession thereunder *in that suit,* while such bar is effective only in that suit and does not in any way interfere with the assertion of the title so barred in any subsequent litigation between the same parties. There is nothing in the decision to suggest that a stranger to the suit who had acquired this same tax title and taken possession under it, excluding the plaintiff, would be liable to have his possession disturbed by a writ of restitution or any other writ or order in the suit.

6. The rule seems to be settled that "ordinarily the writ of assistance is only granted against parties *clearly* bound by the decree, and where on the application for the writ of assistance there is no substantial question that they are so bound." *National Building and Loan Association* v. *Strauss, 49 Atl. Rep. 137 (Vice-Chancellor Emery, 1901)*. It follows that where it is not clear that the party in possession has been brought into the suit according to law as a defendant, or where though confessedly not made a defendant it is not clear whether such party is bound by the decree by virtue of section 58 of the Chancery act or otherwise, the writ of assistance will not be issued. Where it is doubtful whether the purchaser has ob-

tained a lawful title, such a question will not be determined on these summary proceedings for possession. *Van Meter* v. *Borden,* 25 N. J. Eq. (10 C. E. Gr.) 414 (1874).

I shall apply the rule indicated above to this present case. A writ of assistance will not be issued to dispossess Mr. Lamar unless upon the evidence now before this court the right of the purchaser, Mr. Spalding, is found to be clear. I do not think, however, that the case made out by the applicant for the writ is required to be equivalent to a demonstration beyond reasonable doubt, or to have such characteristics of certainty as might be required if an adjudication against Mr. Lamar on this motion would make the relation of his title to that of Mr. Spalding *res adjudicata* in all future litigations between them at law or in equity.

7. In my opinion, the lease under which Mr. Lamar claims the right of possession is not within the operation of section 58 of the Chancery act of 1902. *P. L. p. 531; P. L. 1903 p. 385.* The question is whether this lease, which was neither acknowledged or proved, was an "instrument which by any provision of law could be recorded." If it was, then by the express terms of the statute Mr. Lamar is bound precisely as if he had been made a party and the decree had gone against him. The lease was for five years. The matter to be determined is whether the statute relates (1) to instruments of the general nature and effect described therein, which may be, when proper conditions are performed, recorded in pursuance of a statute; or (2) particular instruments of the character above mentioned which are in the actual condition in all respects required by law in order that they may be recorded; or (3) instruments of the general character above mentioned, either actually prepared for record or which it is within the power of the holder or some other person to have prepared for record.

I do not think that this statute means to penalize a person who has obtained a deed or lease, or mortgage valuable to him, but incapable in its then condition of being placed on record. Nor do I think that the statute means that the court of chancery should try the question whether, for instance, a man in Mr. Lamar's situation had it in his power to procure an ac-

knowledgment or proof from the subscribing witness so as to
put his lease in condition to be recorded. In my judgment, the
statute applies only to a case where a person holds an instru-
ment which in its then condition he can lawfully place on
record, but which he neglects or refuses to record. Many in-
stances of hardship from any other construction, which are
extremely liable to occur, can readily be stated. Certainly, it
cannot be said that the *bona fide* purchaser without notice is
not quite fully protected by our laws.

8. The foregoing notes relate to cases many of which differ
radically from each other in most important respects. The
case of a person taking possession pending a suit under a
concealed title, which, if good, is paramount to the mortgage
under foreclosure, is certainly very different from the case of
a person either in possession at the time of the commencement of
the suit or who has taken possession subsequently, but whose
concealed title is subject to the mortgage. It is the latter case
which is now before this court.

The leading facts are as follows:

Smith, who had no wife, was the owner of the equity of re-
demption by virtue of a deed duly recorded. Smith took title
subject to the mortgage of the complainant, and gave a pur-
chase-money mortgage to Spalding. Smith took possession of
the mortgaged premises, which consisted of a large country
residence, with extensive grounds. Smith owned the furniture
in this residence. In fact, Lamar and his wife also occupied
this property with Smith. If the solicitor of the complainant,
before commencing the foreclosure suit, made diligent inquiry
in order to ascertain who was in possession of the mortgaged
premises, he no doubt learned that the owner of record (Smith)
was in possession, and that with him were residing his sister,
Mrs. Lamar, and her husband, the three persons constituting
practically one family. Such inquiry might have disclosed
Smith's ownership of the furniture. Lamar knew that all the
ascertainable facts in regard to the real estate and furniture
which this family were occupying and using would indicate that
Smith was the owner in possession, while he (Lamar) had no
more of an independent possession than had Mrs. Lamar, his

wife. I do not think that this sort of use of the property by
Lamar gave notice to the solicitor for the complainant that
Lamar had any right of possession independently of Smith's
right of possession, or, in other words, that the possession of
Lamar was not, or might not, be equivalent in law to the pos-
session of Smith. But the disposition of this case does not
depend upon the correctness of this proposition, in view of the
subsequent conduct of Mr. Lamar, which, in my judgment,
amounted to a most emphatic representation on his part that he
had no right of possession which would not be terminated by
the suit when Smith's right of possession should be terminated
thereby. In fact, Mr. Lamar had in his possession a written
lease which Smith had given to him, letting the mortgaged
premises, as well as the furniture therein, for the term of five
years. This lease was subject to the complainant's mortgage,
and also subject to the mortgage to Spalding, but it was in
existence prior to the commencement of the foreclosure suit,
and if the complainant received notice, by Lamar's possession
or otherwise, of the existence of this lease, he would have been
bound to inquire of Lamar in regard to his interest in the
mortgaged premises, and to make Lamar a party defendant in
the foreclosure suit. Lamar, however, kept the lease concealed
during the whole course of the foreclosure suit, of which he
(Lamar) had full notice, and of which he practically took
charge, ostensibly on behalf of his brother-in-law, Smith. He
actively engaged in various efforts to thwart or delay the pro-
ceedings of the complainant to bring his suit to a sale. He
applied for and obtained adjournments, of which he, as lessee
in possession, enjoyed the full benefit. He was present at the
sheriff's sale and gave no notice of his lease. He is charged
with knowledge of the fact that the complainant and his
solicitor were proceeding with their foreclosure suit to a sale
without bringing him (Lamar) in as a party defendant, in reli-
ance upon the representation which Lamar was making by his
entire conduct, including his concealment of his lease, that his
physical possession was merely the possession of Smith, and
that he was interested in the foreclosure suit only as Smith's
agent. In my opinion, this is a case where Mr. Lamar must be

deemed estopped, for the purposes of this foreclosure suit, from denying now, on the motion for a writ of assistance, that his possession is in fact what he has represented it to be, viz., the possession of Smith. If this is not a correct conclusion, it seems to me that every mortgagee, who finds, upon examination of the mortgaged premises, that the owner of the equity of redemption according to the record is in personal possession thereof, but that other persons are residing with him, apparently as members of his family, must make all such other persons parties defendant to his bill. To be safe, it might be necessary to make a dozen boarders or lodgers defendants in a suit to foreclose a mortgage on a boarding-house which the mortgagor was conducting and of which he had personal possession. In case a mortgagor had residing with him, apparently as members of his family, several adult children, unless all of the children were made defendants there might be a series of leases or subleases distributed among the family which would indefinitely prolong their possession as against the mortgagor or the purchaser at his foreclosure sale. Can it be possible that it is the duty of the complainant to make personal inquiry of all the members of the mortgagor's family with a view to discover whether there is a concealed lease from the mortgagor held by some one of them which establishes the fact of possession contrary to the inference to be drawn from the recorded title, together with the personal physical occupation by the mortgagor? If it is the duty of the complainant to prosecute such an inquiry, and each of the members of the mortgagor's family should deny that he had any right of possession as against the mortgagor, and thereupon the mortgagor alone was made defendant in the suit, the right of the purchaser to a writ of assistance, which would dispossess a son who held a concealed lease, might depend upon a mass of contradictory testimony in regard to what was said by the holder of the lease when the complainant's solicitor was prosecuting his inquiries. Mr. Lamar, I think, is charged with knowledge that his possession, while his lease was concealed, would mislead the solicitor for the complainant. It was his duty, therefore, when he became aware of the foreclosure suit, as he did at once, and began to take an active part in it, representing that he was act-

ing as agent for his brother-in-law, Smith, when he was in fact acting for himself as well, to give notice of his lease, if he intended to have his lease recognized in any part of the foreclosure proceedings, including the putting of the purchaser into possession by means of a writ of assistance.

It is true that the evidence in this case shows that, for the most part at least, the supplies for the Smith-Lamar summer residence were bought in the name of Mr. and Mrs. Lamar, and were paid for with Mr. Lamar's money. In view of the fact that Mrs. Lamar, Mr. Smith's sister, presumably occupied the position of mistress of the establishment, and as such controlled the purchases from grocers, bakers, &c., for use in the family, it is not at all surprising that these supplies were furnished in that way. I do not think that this course of dealing can affect the equities of this case. With Smith, the owner of the equity of redemption, apparently in full possession, a rule requiring the complainant or his solicitor, before filing the foreclosure bill, to institute inquiries among the tradespeople near the mortgaged premises in order to discover in whose name the household business was being conducted, in my judgment, would be harsh.

Counsel for Mr. Lamar insists that no estoppel can be raised against Mr. Lamar because he (Mr. Lamar) swears that he did not know until after the sale that his rights as tenant were not cut off. But Mr. Lamar knew all the facts. No fraud is charged against him in concealing his lease, if he saw fit to do so; the fraud would be perpetrated if he now were permitted to claim under his lease that his right of possession was different from what he thought it was and allowed all the parties to the suit to think it was. The great force of an estoppel *in pais,* in the majority of cases, is to prevent a fraud from being accomplished. Even if Mr. Lamar had no intent to deceive or defraud anyone by concealing his lease, the effect of his conduct was precisely the same as if he had such intent. The principle is now generally recognized that an actual evil intent is not a necessary characteristic of conduct which constitutes an estoppel *in pais.* It is with the *effect* of a man's conduct, knowingly pursued, with which the law deals.

It is further insisted, on behalf of Mr. Lamar, that Mr. Spalding has sustained no material injury from his purchase, inasmuch as he was liable for the amount of the complainant's mortgage, for which he has now given a new mortgage, while the balance of his bid was applicable to the payment of his own mortgage. This argument, I think, is based upon a misconception of the nature of the estoppel which is raised in a case of this kind. Mr. Lamar, by standing by in silence at the sheriff's sale while some person purchased the premises upon which he held a concealed title, may in some subsequent litigation be adjudged estopped to set up title under the lease which he thus concealed. Mr. Lamar also, in such a suit, may find his lease practically void under the operation of the recording acts. These are matters now only incidentally on trial. The estoppel raised against Mr. Lamar is not for Mr. Spalding's benefit only; it is for the benefit of every party to this suit, including the purchaser, who is interested in having the suit accomplish all its objects, among which is the placing of the purchaser in possession. The estoppel, primarily, stands for the complainant's protection. He is the party who has been misled by Mr. Lamar's conduct, and who has in reliance on that conduct proceeded with his suit to a sale upon the theory that Lamar's possession was in fact Smith's possession. If Mr. Lamar, at the sheriff's sale, had produced his lease, in my judgment, the complainant could have ordered the sale to proceed with the assurance that Mr. Lamar had spoken too late—that the estoppel against him was complete, and that the court would dispossess him by a writ of assistance in favor of the purchaser. The purchaser, of course, now stands subrogated to all the complainant's rights in respect of this estoppel.

At every point in our inquiry I think it should be borne in mind that the estoppel which we are considering is not an estoppel operating simply between Lamar and Spalding in favor of Spalding's title. No such estoppel, in my judgment, can be tried in this summary proceeding in a suit to which Lamar is not made a party. If Lamar, being notoriously in sole possession at the commencement of the suit, had first heard of the suit on the day of the sheriff's sale, and had attended the sale,

he might by his conduct have estopped himself to set up any title which he had as against a purchaser at such sale; but certainly this court would have no power to try finally such an estoppel on proceedings for a writ of assistance and dispossess Lamar, however *clear* the estoppel might seem to be. The estoppel against Lamar may be said to be in favor of the suit. The gist of the estoppel is not in the representation that Lamar had no title, but in the representation that Lamar's possession was Smith's possession, and hence subject to the process which might be issued in the suit. Lamar, by his conduct, the effect of which, without regard to his actual intention, he must be presumed to have understood, misled the complainant into the belief that his (Lamar's) possession was Smith's possession, and upon this belief the complainant conducted his suit without bringing in Lamar as a party defendant. Lamar, therefore, is estopped now, after the sale, to set up in this suit that his former representation was not true. This, it seems to me, is the precise estoppel against Lamar—an estoppel which is strictly confined to this foreclosure suit, and has no operation after the suit has been concluded.

Apart from all theories, the fact appears distinctly in this case that Mr. Lamar has no right of possession against Mr. Spalding. The case is very different from what it would have been if Mr. Lamar even made a claim to a title or right of possession valid against the mortgagees. Mr. Spalding is the holder of the second mortgage and has succeeded to all the rights of the first mortgagee. Mr. Lamar's lease is subject to both these mortgages. Counsel for Mr. Lamar frankly admits that Mr. Spalding had his action of ejectment against Mr. Lamar and makes no suggestion that in such action Mr. Lamar would have any defence. In all the mass of testimony which has been taken in this proceeding no foundation for any defence is pointed out. Mr. Lamar stands here in this court objecting to being dispossessed by the writ of assistance in this cause, but not claiming that he has any right at law to maintain his possession for one moment against the demand of this purchaser and mortgagee. Even if I am in error in regard to the degree of finality which characterizes an order for possession, or for

a writ of assistance in this case, there is no suggestion of any legal right of possession in Mr. Lamar for the protection of which he is entitled to a trial by jury in a court of law. Certainly Mr. Lamar has had abundant opportunity in this proceeding to establish any equities to which he might lay claim. On the whole case, I think that the right of Mr. Spalding to have the aid of this court to put him in possession as against Mr. Lamar must be deemed a clear right.

9. While an order for possession will be advised, the order for the writ of assistance will not be made until Mr. Lamar has had an opportunity to have the order for possession reviewed by the court of errors and appeals at the next term of that court.

Although I have found that the case against Mr. Lamar is "clear," the principles which have been applied to the discovery and definition of that case are far from being clear—in fact, are involved in doubt and uncertainty—and may well be passed on by our court of last resort before Mr. Lamar is summarily ejected. It appears, also, that an appeal is now pending from the order made in this cause confirming the sale to Mr. Spalding, which appeal may be decided before or during the next term of the court of errors and appeals. Upon consideration of all the circumstances, including the season of the year during which the delay caused by the appeal will occur, I think that Mr. Lamar's possession should not be disturbed at present, provided he promptly takes and diligently prosecutes an appeal. This stay is made without attempting to discuss the force of the peculiar views in regard to the essential nature and effect of an appeal from this court, expressed in the opinion of the late Chief-Justice Beasley in the case of *Pennsylvania Railroad Co.* v. *National Docks, &c., Railway Co., 54 N. J. Eq. (9 Dick.) 647 (1896)*.

I understand that that opinion in fact expressed merely the views of the learned judge who wrote it. See *State Mutual Building and Loan Association* v. *O'Callaghan, 67 N. J. Eq. 103; Delaware, Lackawanna and Western Railroad Co.* v. *Breckenridge, 55 N. J. Eq. (10 Dick.) 159; Morton* v. *Beach, 56 N. J. Eq. (11 Dick.) 791.* The force of the *National Docks Railway Case* as a precedent in the future will, I think, be confined to

cases presenting parallel facts. There seems to be still room to argue in New Jersey that appellate proceedings for the review of a judgment, decree or order at law or in equity oftentimes are in effect procedings for restitution, for compensation on account of erroneous action of the inferior court, for restitution of a status which has been in fact changed, rather than for the prevention of such change of status. I think that a stay by order of this court is necessary to arrest the dispossession proceedings under the writ of assistance until the court of errors and appeals can take action upon the case, and therefore such stay will be granted.

*Mr. Edmund Wilson,* for Spalding, the petitioner.

*Mr. Alan H. Strong,* for Lamar, the appellant.

The opinion of the court was delivered by

DIXON, J.

On June 12th, 1900, Albert G. Spalding executed to Alice C. Strong a mortgage for $50,000, on land in Monmouth county, and the mortgage was duly recorded June 20th, 1900. On April 25th, 1901, Spalding conveyed the property to Bernard Smith, by deed, duly recorded April 29th, 1901, and Smith gave back to Spalding a purchase-money mortgage of the same date, which was also duly recorded on April 29th, 1901. On July 15th, 1903, Alice C. Strong filed a bill in chancery to foreclose her mortgage, making Spalding and Smith parties defendant, and in pursuance thereof the property was, on May 13th, 1904, sold to Spalding by virtue of an execution to satisfy the Strong and Spalding mortgages. On July 21st, 1904, Spalding received a deed for the property, and on October 12th, 1904, presented to the chancellor a petition for a writ of assistance commanding Smith and anyone claiming under him to deliver possession of the property to the petitioner. This petition having come to the knowledge of David Lamar, he appeared at the time set for the hearing to oppose the issuance of the writ, and

was thereupon formally admitted as a party to the proceeding. By the testimony subsequently presented on his behalf, it was disclosed that he claimed to be in possession and entitled to possession of the mortgaged premises under an unrecorded lease made to him by Smith on May 22d, 1901, for the term of five years from that date, and that his possession had been open and continuous since the date of the lease. After full hearing an order was made that the writ should issue notwithstanding his claim, and thereupon he has appealed to this court.

The appellant does not question the superiority of the petitioner's right of possession; his only contention is that it cannot be enforced by writ of assistance. His position is that such a writ can lawfully issue against those only who are barred by the decree in the cause, and that as his rights were acquired before the commencement of the suit, and he was not made a party defendant, although in open occupation of the property, the decree did not affect him. To maintain his position respecting the limited scope of the writ, he refers to the expressions of various text-writers and to the opinion of Chancellor Zabriskie, in *Blauvelt* v. *Smith,* *22 N. J. Eq.* (*7 C. E. Gr.*) *31.*

The utterances thus cited may be regarded as declaring the general rule, but they cannot be deemed accurate statements of the law on this subject. The function of the writ is to put into actual possession of property the person who, under decree of the court, becomes entitled thereto, and, as was said by Chief-Justice Beasley, speaking for this court, in *Beatty* v. *De Forest,* *27 N. J. Eq.* (*12 C. E. Gr.*) *482,* "the remedy is founded on the general principle that a court of equity will, when it can do so justly, carry its own decrees into full execution without relying on the co-operation of any other tribunal. The consequence is that it cannot refuse its aid to one of its suitors in this respect, except on some reasonable ground of equity." In pointing out the origin of the writ and the proper practice relating to it, Chancellor Green, in *Schenck* v. *Conover, 13 N. J. Eq.* (*2 Beas.*) *220, 227,* stated these rules: The writ may issue "not only as against the defendant, but against any party in possession under him, or by title not superior to his. * * * The exercise of the power rests in the sound discretion of the court. It will

never be exercised in a case of doubt, nor under color of its exercise will a question of legal title be tried or decided."

The words of these eminent jurists mark the true sphere of the writ.

Of course, it is necessary that the rights of the person from whom possession is sought should in some lawful mode be subjected to the jurisdiction of the court. Ordinarily this is done by making him a party to the suit in which the decree to be enforced is rendered. But it may be done by giving him notice of the possessory proceeding instituted on the basis of the decree, or by his appearance in such proceeding. If, when he is thus brought in, it is clearly shown that he claims under one who was a party to the suit, and that his right of possession is undoubtedly subordinate to the right for the enforcement of which the writ of assistance is prayed, then it may be issued against him, even though technically he is not bound by the decree.

Such is the situation of the present appellant, and there is no reasonable ground of equity on which the court can refuse its aid to the petitioner against him.

This view renders it unnecessary for us to consider whether under section 58 of the Chancery act of 1902, amended in 1903, or by force of any estoppel *in pais,* the decree in foreclosure bars the appellant from his equity of redemption.

The order appealed from is affirmed.


*For affirmance*—THE CHIEF-JUSTICE, DIXON, GARRISON, FORT, GARRETSON, PITNEY, SWAYZE, BOGERT, VREDENBURGH, VROOM, GREEN—11.


*For reversal*—None.