ELLVEEAY NEWSPAPER WORKERS' BUILDING AND LOAN ASSOCIATION, A CORPORATION OF NEW JERSEY, PLAINTIFF-APPELLEE, v. WAGNER MARKET COMPANY, A CORPORATION OF NEW JERSEY, DEFENDANT-APPELLANT.

Argued May 2, 1933—Decided May 22, 1933.

Before Justices PARKER and PERSKIE.

For the appellant, *W. Howard Demarest*.

For the appellee, *Braelow & Tepper*.

The opinion of the court was delivered by

PERSKIE, J.  This case come up before the court on an appeal from a judgment rendered by the District Court (Second Judicial District of the county of Essex) in favor of the plaintiff.  The facts upon which this judgment was entered and on which this appeal is predicated are based on stipulations between counsel of the respective parties.  These stipulations disclose the following facts:  On April 29th, 1927, a purchase-money mortgage was executed by the Northfield Realty Corporation to the Ellveeay Newspaper Workers'

Building and Loan Association covering the premises 175 Main street, Orange, New Jersey; that on October 13th, 1927, the Northfield Realty Corporation entered into a written lease for the said premises to the Wagner Market Company, for a period of ten years, from November 1st, 1927, at a yearly rental of $1,800 per year, for the first two years; $2,100 per year for the second two years; $2,400 per year for the succeeding one year, being the fifth year of the said term, and $3,000 per year for the remaining five years of the said term. Payments to be made in equal monthly installments, in advance. The Northfield Realty Corporation defaulted in the mortgage executed by it, whereupon foreclosure suit was instituted. The tenant, Wagner Market Company was made a party defendant to this suit. This suit was later discontinued. Subsequently, on February 4th, 1930, a new mortgage was executed by the Northfield Realty Corporation to the Ellveeay Newspaper Workers' Building and Loan Association, and in April, 1930, the Wagner Market Company, subordinated the lien of its lease to the latter mortgage. There was a foreclosure under this mortgage and the Wagner Market Company was not made a party defendant. In the course of foreclosure a receiver *pendente lite* for the collection of rents was appointed. In June, 1932, a sale under the foreclosure suit was held and the Ellveeay Newspaper Workers' Building and Loan Association became the purchaser of the property. Sheriff's deed was obtained and recorded in August, 1932. During all this time, and thereafter, the tenant, Wagner Market Company, continued to pay the rent reserved under its lease up and until November, 1932. The tenant then refused to pay the November and December (1932) installments of $250 per month but tendered $200 per month for the said months and served a notice of intention to quit the premises. Plaintiff below declined to receive either and insisted that the rental due for the said months was on a basis of $250 per month, and the tenancy was to continue until November, 1937. Whereupon suit was instituted. Defendant below resisted payment, contending that if one David Loesberg was called as a witness for it (and

incidentally other than a reference in the defendant-appellant's brief that he was an officer of the plaintiff-appellee, there is nothing to indicate the status of this David Loesberg) he would testify that in 1931 he agreed with the defendant-appellant that the lease should be disregarded and canceled, but that it, the tenant, should continue in possession from month to month and pay the monthly rent on the basis fixed by the lease, which was $175 per month at the time of the agreement. The increase to $200 per month would automatically take effect when and as provided by said lease, and nothing was discussed as to any further increase and that the signatures were torn off his copy of the lease. That in addition thereto, this same David Loesberg would testify that he agreed, and accordingly did, on November 9th, 1932, execute a written release releasing the tenant. On the other hand the stipulations set forth that one Alexander Harris (an officer of the plaintiff-appellee) would testify that on June 14th, 1932, Mr. Wagner (an officer of the defendant-appellant) called in reference to the premises and sought a reduction of rental on the ground of bad business conditions, to $150 per month, and that Harris said he would take it up with the board and that he did so but that the board of directors of the Ellveeay Newspaper Workers' Building and Loan Association refused any such offer.

Unless the minds of the parties to a lease concur in the common intent of relinquishing the relationship of landlord and tenant and execute that intent by acts which are tantamount to a stipulation to put an end thereto, there can be no surrender by act or operation of law. *Meeker* v. *Spalsbury*, 66 *N. J. L.* 60; *Miller* v. *Dennis*, 68 *Id.* 320.

The conduct of the defendant-appellant (tenant) in acknowledging its tenancy, paying the automatically increased rental under the lease up and until November, 1932, clearly negatives the contention that early in 1931 there was effected a common intent between the parties to relinquish, disregard or cancel the lease in question.

This being so, we come to what we believe is the crux of the entire case. That is, what effect, if any, did the fore-

closure suit have on this lease, the owner of which was not made a party defendant?

The plaintiff-appellee contends that it was substituted by law to all the rights and remedies of the Northfield Realty Corporation by virtue of the foreclosure. The defendant-appellant contends that assuming there was a lease that it was merely a tenancy from year to year.

There seems to be no direct case in our state on point. Neither the cases of *Blauvelt* v. *Smith,* 22 *N. J. Eq.* 31, and *Strong* v. *Smith,* 68 *Id.* 686 (cited in support of plaintiff-appellee), nor the case of *Hinck* v. *Cohen,* 86 *N. J. L.* 615, cited by the defendant-appellant, are in our opinion applicable.

In 14 *A. L. R.* 664, the law on the subject is stated as follows:

"Whether a lease of real estate previously mortgaged is terminated by a foreclosure action and sale is held by the majority of decisions, to depend on the joinder of the lessee as a party to the foreclosure action. Though there are some conflicting decisions, such a lease by the weight of authority is thus terminated in case, and only in case, the lessee was made a party to the foreclosure suit."

To like effect is 42 *Corp. Jur.* 59, 260.

It would seem that the tenant was angling in the first place to preserve the lease. The new mortgage, though dated February 4th, 1930, was not given priority over the lease until April, 1930. Later, whether because of bad business conditions or because it is being done these days, or both, the tenant adopted tactics tending to effect a reduction of rent reserved under the lease, but as we view the matter, without legal basis. It is a matter of legal unconcern to a tenant which has attorned to the new owner and enjoyed the undisturbed possession of the premises, whether the new ownership of the reversion was acquired by virtue of a foreclosure proceeding to which the tenant was not made a party, or whether the ownership was acquired by virtue of a purchase, gift, devise or otherwise, to which the tenant is likewise no party.

The judgment of the court below will be affirmed, with costs.