MONMOUTH COUNTY CIRCUIT COURT.

CITY OF ASBURY PARK, A MUNICIPAL CORPORATION OF
THE STATE OF NEW JERSEY, PLAINTIFF, v. TILLIE
EHRLICH AND BROAD AND MURRAY REALTY COM-
PANY, DEFENDANTS.

Decided July 9, 1947.

For the plaintiff, *E. Alexander Edelstein*.

For the defendants, *Durand, Ivins & Carton*.

KINKEAD, C. C. J. This is an ejectment suit, whereby the
City of Asbury Park seeks possession of premises occupied by
defendants. The plaintiff alleged in its complaint that its
rights to possession accrued on the 25th day of June, 1946.
The defendants in their answer filed a general denial, and
the plaintiff now moves to strike the answer.

The premises involved had been formerly owned by Coleman
House, Inc. In 1934, they were sold to the plaintiff for non-
payment of 1933 taxes. The certificate of tax sale was not

recorded until January 16th, 1940. In December, 1945, the plaintiff filed a bill to foreclose its tax title and the foreclosure proceedings were completed by the entry of a final decree dated June 21st, 1946. The defendants were not joined in the tax foreclosure suit, despite the fact that they, or one of them, have been in continuous possession since 1934. Furthermore, the city had actual knowledge of the defendants' possession through the issuance of mercantile licenses to the defendants to do business on the property involved. Since 1943, the defendants have occupied the premises by virtue of successive written leases from Coleman House, Inc., the last lease being dated January 2d, 1946.

After the city obtained final decree in the foreclosure, it demanded possession from the defendants, who refused to quit. This suit was thereupon instituted. During its pendency, plaintiff made written demand on defendants for the payment of rent. The defendants complied and sent the sum of $500 to the city which, after being retained for a few days, was returned to the defendants with the information that the city desired only possession of the property.

Plaintiff bases its claim for possession on *N. J. S. A.* 54:5–53.1, and on the theory that defendants were bound by the foreclosure decree even though not joined therein.

The tax statutes of New Jersey, commencing with the year 1903, as they affect the right of a holder of a tax certificate to possession, are as follows:

Chapter 208, laws of 1903, section 56, which gives the purchaser of a tax certificate the right to record the same, who "thereupon shall be entitled to immediate possession of the property sold and described in the certificate and to all the rents and profits therefrom  *  *  *."

Chapter 237, laws of 1918, section 34, wherein the language is similar to that of the 1903 act.

Chapter 81, laws of 1926, which amended the 1918 act to provide that the purchaser was not entitled to rents for such part of a dwelling house occupied by an owner or his family until after two years after recording the certificate.

Chapter 169, laws of 1929, which amended the 1918 act by eliminating the right to possession.

Chapter 54, laws of 1942, which gave the municipality, after recording its tax certificate, the right to "immediate possession of the property sold and described in the certificate and to all the rents and profits thereof from and after the date of record and while the holder thereof * * *."

The next statute is *N. J. S. A.* 54:5–53.1, the pertinent provisions of which are as follows:

"Whenever a municipality has heretofore or shall hereafter become the purchaser of any lands at any tax sale and the certificate of sale has been or shall be recorded in the manner provided by chapter five of title 54 of the Revised Statutes, such municipality shall be entitled to immediate possession of the property sold and described in the certificate and to all the rents and profits thereof while the holder thereof, until redemption, but all rents and profits collected by such municipality shall be credited on the amount due upon said certificate of tax sale and for subsequent taxes, assessments or other municipal charges assessed against said lands and when the total amount due for the same, including all interests and costs, has been paid, the said lands shall be redeemed from said tax sale.

"Whenever a municipality shall take possession of any property pursuant to the provisions of this section, the collector of taxes or other officer thereof, whose duty it shall be to collect taxes therein, shall take possession of said property and collect the rents and profits thereof for said municipality and, with the approval of the governing body of said municipality, may designate any competent person to act as the agent of said municipality for the collection of the rents and profits of said property and for the management of the same and such person shall account promptly to such collector or other officer, and the collector or other officer shall account promptly to the municipality, for the rents and profits so collected."

The first point to be decided is whether the city acquired actual or constructive possession of the premises by virtue of the provisions of *N. J. S. A.* 54:5–53.1. The plaintiff maintains that the statute confers actual possession including the right to evict tenants of the owner. The only case which I

have been able to find, construing this statute, is that of *United States* v. *7.41 Acres of Land, &c., 63 Fed. Supp.* 43. Judge Forman (at *p.* 46) held:

"The possession contemplated under *N. J. S. A.* 54:5–53.1 is a constructive one, · as *contra*-distinguished from actual possession which a municipality would have the right to take by a writ of assistance after foreclosure of the right of redemption under a tax sale certificate. The municipality, however, can only exercise its right to take immediate possession of the premises, under this statute, when they are income producing. Then it may receive the rents and profits, apply them to the payment of the delinquent taxes and give the owner an accounting thereof. To this extent it is clothed with the same powers as a receiver. A tenant has no election but to attorn."

The rights of the holder of a tax certificate are similar to those of a mortgagee in possession. *Merchants' and Traders' Realty Co., Inc.,* v. *Stern,* 101 *N. J. Eq.* 629; 138 *Atl. Rep.* 697; *affirmed,* 102 *N. J. Eq.* 290; 140 *Atl. Rep.* 390. Vice-Chancellor Berry, 101 *N. J. Eq.* (at *p.* 633); 138 *Atl. Rep.* (at *p.* 699), held:

"Under the 1918 act, however, on redemption he is entitled to reimbursement for those expenditures. *A fortiori,* then, a purchaser at a tax sale in possession should now pay taxes and other municipal liens accruing during such possession. His rights under the 1918 act are those of a mortgagee in possession. *Cohn* v. *Simon* and *Cohn* v. *Schrader, supra.* In those cases the Supreme Court, in referring to section 34 of the Tax Sale Revision of 1918, said:

" 'We think the intent of the statute was to enable the purchaser of a tax title upon recording his certificate to acquire *the right of a mortgagee in possession,* but in this respect the statute was not self-executory, and the purchaser of the tax title might, if he chose, avoid the *responsibility* of the mortgagee in possession.' (Italics mine.)

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

"The rights of a mortgagee in possession are to collect the rents and profits; his responsibilities include a liability to account for those rents and profits on redemption. *Stewart*

v. *Fairchild* (*Court of Errors and Appeals*), 91 *N. J. Eq.* 86; 108 *Atl. Rep.* 301."

In considering that the rights of the holder of a tax certificate are similar to those of a mortgagee in possession, it must be kept in mind that in the instant case, the defendant, upon demand for rent, attorned to plaintiff and paid $500 which sum, I assume, was the amount due under defendants' lease with Coleman House, Inc. However, plaintiff thereupon returned the rent, with the advice that the city sought only possession of the premises.

It has been held in New Jersey that when a mortgage is in default, the mortgagee has the right to maintain ejectment, but the tenant may avoid ejectment by attorning to the mortgagee. *Del-New Co.* v. *James,* 111 *N. J. L.* 157; 167 *Atl. Rep.* 747. In this case the court, 111 *N. J. L.* (at *p.* 159); 167 *Atl. Rep.* (at *p.* 748), held:

"Now, since a mortgagee, after default, has the right to maintain ejectment, it follows the tenant may attorn to such mortgagee in order to avoid ejectment and to keep himself in possession of the leased premises."

Since the rights of the tax certificate holder are no stronger than those of a mortgagee in possession, it follows that a tenant may avoid ejectment by attorning to the tax certificate holder and tendering the rent which is due under tenant's lease with the owner.

The holding of the court in *United States* v. *7.41 Acres of Land, &c., supra,* that to a certain extent the holder of a tax certificate is clothed with the powers of a receiver, leads to a consideration of the rule in New Jersey that a receiver is not authorized to dispossess a tenant who occupies premises by virtue of a lease with the owner.

In *Fidelity Union Trust Co.* v. *75 Prospect Cooperative Apartment,* 131 *N. J. Eq.* 387 (at *p.* 389); 25 *Atl. Rep.* (2d) 508 (at *p.* 509), Vice-Chancellor Bigelow held:

"Established practice confines the receiver of leased property to the collection of rents due the owner of the mortgaged estate, and does not permit him to dispossess tenants in disregard of the terms of their leases."

The language of the second paragraph of the statute is, in my opinion, most significant:

"Whenever a municipality shall take possession of any property pursuant to the provisions of this section, *the collector of taxes or other officer thereof, whose duty it shall be to collect taxes therein, shall take possession of said property and collect the rents and profits thereof for said municipality* * * *." (Italics mine.)

It is quite clear that the legislative intent was to empower any municipality holding a tax certificate, to collect the rents and revenue of premises on which the certificate is held, and to specify the method by which the municipality shall effectuate such collection.

My conclusion on this point is therefore that under *N. J. S. A.* 54:5–53.1, the plaintiff acquired only a constructive possession of the involved premises, and has no right under this statute to evict any tenant of the owner who attorns to the municipality.

The remaining point to be considered and decided is as to whether or not the foreclosure decree empowered the city to evict the defendants, despite the lease entered into with the owners on January 2d, 1946, prior to the date of the final decree in June, 1946. The city contends that, despite the failure to join the defendants in the foreclosure suit, it has the right, nevertheless, to evict the defendants.

In support of this contention, the city relies upon the holding of the Court of Errors and Appeals in *Strong* v. *Smith,* 68 *N. J. Eq.* 686; 60 *Atl. Rep.* 66; 63 *Atl. Rep.* 493. In that case, one Albert G. Spalding on June 12th, 1900, executed a mortgage to Alice C. Strong on land in Monmouth County, and the mortgage was recorded June 20th, 1900. On April 25th, 1901, Spalding conveyed the property to Bernard Smith, by deed, duly recorded April 29th, 1901, and Smith gave back to Spalding a purchase-money mortgage of the same date, which was also duly recorded on April 29th, 1901. On July 15th, 1903, Alice C. Strong filed a bill in Chancery to foreclose her mortgage, making Spalding and Smith parties defendant, and in pursuance thereof the property was, on May 13th, 1904, sold to Spalding by virtue of an execution

to satisfy the Strong and Spalding mortgages. On July 21st, 1904, Spalding received a deed for the property, and on October 12th, 1904, presented to the Chancellor a petition for a writ of assistance commanding Smith and anyone claiming under him to deliver possession of the property to the petitioner. This petition having come to the knowledge of David Lamar, he appeared at the time set for the hearing to oppose the issuance of the writ, and was thereupon formally admitted as a party to the proceeding. By the testimony subsequently presented on his behalf, it was disclosed that he claimed to be in possession and entitled to possession of the mortgaged premises under an unrecorded lease made to him by Smith on May 22d, 1901, for the term of five years from that date, and that his possession had been open and continuous since the date of the lease.

It will be helpful to follow the facts as further outlined by Vice-Chancellor Stevenson in his opinion which precedes the decision of the Court of Errors and Appeals. At *p.* 696 of 68 *N. J. Eq.;* at *p.* 71 of 60 *Atl. Rep.,* the Vice-Chancellor stated :

"Smith, who had no wife, was the owner of the equity of redemption by virtue of a deed duly recorded. Smith took title subject to the mortgage of the complainant, and gave a purchase-money mortgage to Spalding. Smith took possession of the mortgaged premises, which consisted of a large country residence, with extensive grounds. Smith owned the furniture in this residence. In fact, Lamar and his wife also occupied this property with Smith. If the solicitor of the complainant, before commencing the foreclosure suit, made diligent inquiry in order to ascertain who was in possession of the mortgaged premises, he no doubt learned that the owner of record (Smith) was in possession, and that with him were residing his sister, Mrs. Lamar, and her husband, the three persons constituting practically one family. Such inquiry might have disclosed Smith's ownership of the furniture. Lamar knew that all the ascertainable facts in regard to the real estate and furniture which this family were occupying and using would indicate that Smith was the owner in possession, while he (Lamar) had no more of an inde-

pendent possession than had Mrs. Lamar, his wife. I do not think that this sort of use of the property by Lamar gave notice to the solicitor for the complainant that Lamar had any right of possession independently of Smith's right of possession, or, in other words, that the possession of Lamar was not, or might not, be equivalent in law to the possession of Smith. But the disposition of this case does not depend upon the correctness of this proposition, in view of the subsequent conduct of Mr. Lamar, which, in my judgment, amounted to a most emphatic representation on his part that he had no right of possession which would not be terminated by the suit when Smith's right of possession should be terminated thereby. In fact, Mr. Lamar had in his possession a written lease which Smith had given to him, letting the mortgaged premises, as well as the furniture therein, for the term of five years. This lease was subject to the complainant's mortgage, and also subject to the mortgage to Spalding, but it was in existence prior to the commencement of the foreclosure suit, and if the complainant received notice, by Lamar's possession or otherwise, of the existence of this lease, he would have been bound to inquire of Lamar in regard to his interest in the mortgaged premises, and to make Lamar a party defendant in the foreclosure suit. Lamar, however, kept the lease concealed during the whole course of the foreclosure suit, of which he (Lamar) had full notice, and of which he practically took charge, ostensibly on behalf of his brother-in-law, Smith. He actively engaged in various efforts to thwart or delay the proceedings of the complainant to bring his suit to a sale. He applied for and obtained adjournments, of which he, as lessee in possession, enjoyed the full benefit. He was present at the sheriff's sale and gave no notice of his lease. He is charged with knowledge of the fact that the complainant and his solicitor were proceeding with their foreclosure suit to a sale without bringing him (Lamar) in as a party defendant, in reliance upon the representation which Lamar was making by his entire conduct, including his concealment of his lease, that his physical possession was merely the possession of Smith, and that he was interested in the foreclosure suit only as Smith's agent."

The Vice-Chancellor allowed the writ of assistance sought by the complainant, and the Court of Errors and Appeals, in affirming this ruling, held, 68 *N. J. Eq.* (at *p.* 705); 63 *Atl. Rep.* (at *p.* 494):

"Of course, it is necessary that the rights of the person from whom possession is sought in some lawful mode be subjected to the jurisdiction of the court. Ordinarily this is done by making him a party to the suit in which the decree to be enforced is rendered. But it may be done by giving him notice of the possessory proceeding instituted on the basis of the decree, or by his appearance in such proceeding. If, when he is thus brought in, it is clearly shown that he claims under one who was a party to the suit, and that his right of possession is undoubtedly subordinate to the right for the enforcement of which the writ of assistance is prayed, then it may be issued against him, even though technically he is not bound by the decree."

This decision, at first blush, would seem to be dispositive of the second point. Yet, although the Court of Errors and Appeals has never expressly reversed its holding in *Strong* v. *Smith, supra,* the more recent decisions of the court have, by implication, reversed that holding.

In *Ellveeay Newspaper, &c., Association* v. *Wagner Market Co.,* 110 *N. J. L.* 577 (at *p.* 580); 166 *Atl. Rep.* 332 (at *p.* 333); *affirmed,* 112 *N. J. L.* 88; 169 *Atl. Rep.* 692, the Supreme Court held as follows:

"In 14 *A. L. R.* 664, the law on the subject is stated as follows:

"'Whether a lease of real estate previously mortgaged is terminated by a foreclosure action and sale is held by the majority of decisions, to depend on the joinder of the lessee as a party to the foreclosure action. Though there are some conflicting decisions, such a lease by the weight of authority is thus terminated in case, and only in case, the lessee was made a party to the foreclosure suit.' To like effect is 42 *Corp. Jur.* 59, 260."

In *American-Italian Building and Loan Association* v. *Liotta,* 117 *N. J. L.* 467 (at *p.* 471); 189 *Atl. Rep.* 118 (at *p.* 120), the Court of Errors and Appeals held:

"We have held, following the great weight of authority and the soundness thereof is not questioned, that unless a tenant is made a party defendant to the foreclosure suit his interest is unaffected thereby. *Ellveeay Newspapers, &c., Association* v. *Wagner Market Co.*, 110 *N. J. L.* 577; 166 *Atl. Rep.* 332; *affirmed*, 112 *N. J. L.* 88; 169 *Atl. Rep.* 692."

In line with the more recent trend of decisions in our courts is the opinion in *Walgreen Co.* v. *Moore*, 116 *N. J. Eq.* 348 (at *p.* 349); 173 *Atl. Rep.* 587 (at *p.* 588); where Vice-Chancellor Berry held:

"The sole question presented on this motion is whether or not the lease of a lessee who is not a party defendant to a bill to foreclose a prior mortgage is terminated by the appointment of a rent receiver in a foreclosure suit. The answer is that it is not, and this proposition seems to me to be too plain to admit of argument."

Then, too, there is the holding of the Court of Errors and Appeals as set forth in the syllabus in *LaCombe* v. *Headley*, 91 *N. J. Eq.* 63; 108 *Atl. Rep.* 185, 186:

"It is the duty of an intending purchaser of land which is in the possession of a person other than the proposed grantor to inquire of the occupant and ascertain the rights under which he holds, and if he does not make such inquiry, he is chargeable with notice of such facts as the inquiry would have revealed."

It must be taken into consideration that in *Strong* v. *Smith, supra*, the Court of Errors and Appeals affirmed the allowance of a writ of assistance against a party who had not been joined in the foreclosure proceedings where said party had concealed the possession of his unrecorded lease, and whose conduct throughout the entire proceedings had been most deceptive. There is no element of concealment or deception present in the instant case. The possession of the defendants had been continuous for many years. The city had actual notice of the defendants' possession and had issued mercantile licenses to the defendants, permitting them to transact business.

Therefore, despite the fact that the Court of Errors and Appeals decision in *Strong* v. *Smith, supra*, has never been

expressly reversed, I conclude nevertheless that it is unequivocally the law in New Jersey at the present time that a tenant's right to possession of premises remains unaffected if the tenant is not joined in foreclosure proceedings, and if the tenant attorns. The failure of the city to join the defendants in the foreclosure proceedings leaves unimpaired the defendants' occupancy during the period specified in defandants' lease.

Counsel for the plaintiff has contended that it might be possible for an owner and tenant to defraud a municipality by entering into a lease for a lengthy term at a ridiculously low rental. Counsel does not contend that such circumstances exist in the instant case, and in disposing of this contention, I conclude that where collusion or fraud could be shown, that an appropriate remedy could always be sought in the Court of Chancery.

The motion of the plaintiff is therefore denied, and an order in conformity with my opinion may be presented for my signature.